IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK B. LEE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  12-0782 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                                              October 17, 2012

Currently pending before the Court are Plaintiff Patrick B. Lee's Objections to the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells.  For the following reasons, the Objections are overruled and the Commissioner of Social Security's decision is affirmed.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. § 301, et seq., on November 4, 2010.  (R. 108–109 )[1]  His claim alleged disability since August 31, 2010, due to a lateral meniscus tear and chronic synovitis of his left knee, hypertrophic synovitis of his right knee, degenerative changes of the acromioclavicular joint in his left shoulder, acromioclavicular arthritis and edema in his right

---

[1]  For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

shoulder, chronic headaches, and bilateral knee and shoulder injuries. (Id. at 108, 127.) The state agency denied Plaintiff's application on February 10, 2011, and Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). (Id. at 38–39, 71–75.) Following a hearing, ALJ Deborah Mande denied Plaintiff benefits in a decision dated July 22, 2011. (Id. at 22–32, 43–69.) The Appeals Council subsequently denied Plaintiff's request for review on December 20, 2011, (id. at 1–3), making the ALJ's ruling the final decision of the agency. 20 C.F.R. § 404.981.

Plaintiff initiated the present civil action in this Court on February 14, 2012. Following referral by the undersigned, United States Magistrate Judge Carol Sandra Moore Wells issued a Report and Recommendation ("R&R"), dated September 13, 2012, deeming Plaintiff's arguments meritless and recommending that the ALJ's decision be affirmed.

Plaintiff filed Objections to the R&R, on September 19, 2012, asserting the following: (1) the Magistrate Judge does not address the fact that the ALJ ignored, indeed never even acknowledged, Dr. Ross's opinion, contained in her January 30, 2011 assessment, that Plaintiff could perform "no repetitive movements"; (2) the Magistrate Judge improperly affirmed the ALJ's rejection of Dr. Ross's opinion that Plaintiff could sit for a maximum of three to four hours in an eight-hour day; (3) the Magistrate Judge did not address the ALJ's failure to explain how or whether she considered Plaintiff's statement that he suffered from daily fatigue and must nap to relieve it; and (4) the Magistrate Judge improperly found that the ALJ's failure to consider the favorable impact of Plaintiff's lengthy work history on his credibility was not reversible error. Defendant filed a Response to these Objections on September 27, 2012, making them ripe for this Court's consideration.

## II. STANDARDS OF REVIEW[2]

### A. Standard for Judicial Review of an ALJ's Decision

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)). When making this determination, a reviewing court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In other words, even if the reviewing court, acting *de novo*, would have decided the case differently, the Commissioner's decision must be affirmed when supported by substantial evidence. Id. at 1190–91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

### B. Standard of Review of Objections to a Report and Recommendation

Where a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in *de*

---

[2] The medical record, ALJ's findings, and statutory framework for assessing a disability claim were adequately summarized by the Magistrate Judge. Accordingly, the Court incorporates those portions of the R&R by reference into this opinion.

3

*novo* review of only those issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. See United v. Raddatz, 447 U.S. 667, 676 (1980).

## III. DISCUSSION

As set forth above, Plaintiff lodges four Objections to the Magistrate Judge's Report and Recommendation. The Court considers each individually.

### A. The Magistrate Judge's Failure to Address the ALJ's Ignoring Dr. Ross's Assessed Limitation on Plaintiff's Repetitive Movements

Via his first objection, Plaintiff disagrees with the Magistrate Judge's finding that the ALJ properly considered the opinion of Plaintiff's treating and board-certified orthopedic surgeon, Dr. Ross. Plaintiff goes on to argue that the ALJ ignored—indeed never even acknowledged—Dr. Ross's opinion, in her January 30, 2011 assessment, that Plaintiff could perform "no repetitive movements." This limitation, according to Plaintiff, is critical because it affects his dominant right hand, thereby limiting his ability to write and preventing him from performing the duties of his past job as a registered representative.

The record in this case indicates that, on January 30, 2011, Dr. Laura Ross, a board-certified orthopedic surgeon, prepared a "Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities," based on her ongoing treatment of Plaintiff. (R. 209–10.) Under the category of "Pushing and Pulling," Dr. Ross checked off the boxes

indicating that Plaintiff was limited in both his upper and lower extremities, and opined that he should engage in "very minimal and no repetitive movements" with his upper extremities. (R. 209.) When formulating Plaintiff's Residual Functional Capacity[3] ("RFC") assessment, the ALJ expressly acknowledged Dr. Ross's medical source statement as follows:

> As for the opinion evidence, Dr. Ross completed a medical source statement dated January 30, 2011, soon after claimant's shoulder surgery, and indicated that the claimant was limited to lifting/carrying 10 pounds occasionally and less than five pound frequently. Claimant was noted to be capable of standing/walking up to two hours in an eight-hour workday and able to sit up to four hours in an eight-hour workday. Claimant was limited in the use of his upper and/or lower extremities for pushing/pulling activities and unable to perform an kneeling or crouching with bending, stooping, balancing and climbing limited to occasionally. Reaching was limited to shoulder level and environmental restrictions included heights, moving machinery, vibration, temperature extremes and wetness. . . . Some weight is given to this treating source assessment except for the lifting, carrying and sitting assessments because the limitations cited are more restrictive than claimant's assertion and demonstrated activity.

(R. 30.) Ultimately, the ALJ found that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently; could stand and walk for a total of two hours during the day; could sit for six hours; could occasionally reach overhead with the left upper extremity, but never with the right upper extremity; could not operate foot controls, climb ladders or scaffolds, or kneel, crawl and/or crouch; and could occasionally bend and balance. (R. 29.) Based on this assessment, the ALJ deemed Plaintiff capable of returning to his past relevant work as a registered representative because it was generally performed in the sedentary to light exertional level, and that there were other jobs existing in the national economy that he was able to perform. (R. 31.)

---

[3] "'Residual Functional Capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (quotations omitted)); see also 20 C.F.R. § 404.1545(a)(1)).

In his Request for Review, Plaintiff argued that the ALJ's failure to address Dr. Ross's limitation on Plaintiff's ability to perform any repetitive movements with his right upper extremity was fatal to the validity of the ALJ's determination. Plaintiff went on to reason that based on his administrative hearing testimony that his right shoulder pain affected the function of his right (dominant) hand, and because writing was required in his previous financial services job, the ALJ's determination that he could return to that past relevant work was not supported by substantial evidence. (Pl.'s Mem. Supp. Request for Review 6.) The Magistrate Judge did not specifically address this argument, but rather generally remarked that the ALJ properly exercised her authority to accept some of Dr. Ross's limitations while rejecting others because they were more restrictive than Plaintiff's testimony and his activities of daily living. (R&R 8.)

Notwithstanding the Magistrate Judge's non-discussion of this precise issue, the Court nonetheless finds that the R&R appropriately deemed the ALJ's decision to be supported by substantial evidence. The ALJ explicitly accepted the entirety of Dr. Ross's assessment, save for the carrying, sitting, and standing limitations. Notably, Dr. Ross never put any limitation on Plaintiff's use of his hands or on his ability to write. Rather, Dr. Ross described Plaintiff as being limited by impingement of his right *shoulder*. (R. 205.) Although she checked a box indicating that Plaintiff should do no repetitive movements with his right upper extremity, that limitation was clearly restricted to movements with his *shoulder*, given her repeated comments elsewhere about shoulder limitations and shoulder impairments. This limitation was ultimately included in the ALJ's hypothetical to the vocational expert. (R. 67.) Quite crucially, Dr. Ross explicitly opined that Plaintiff was <u>not</u> limited in handling or fingering—the precise abilities necessary for writing. (R. 210.) In other words, Dr. Ross's assessment offered no basis on

6

which the ALJ could find that Plaintiff's ability to write was affected by his impairments.

Ultimately, the only evidence of record supporting Plaintiff's current claim that he cannot write is the following testimony from his administrative hearing:

> Q. So you feel that because of your right shoulder you wouldn't be able to be an investment advisor?
> A. Because it's—I'm right-hand dominant. And with what I have to do and the repetitive motions, something as simple as writing is starting to really pose a problem.

(R. 52.) Plaintiff, however, went on to testify that he was taking online financial-related courses for two to three hours at a time, thus undermining any proclaimed inability to use his hands. In short, a limitation on Plaintiff's use of his hands finds no support in Dr. Ross's opinion or any other identified medical evidence of record. Accordingly, the ALJ did not err in not including such a limitation. In turn, this objection is overruled.

    **B.**    **The Magistrate Judge's Affirmance of the ALJ's Rejection of Dr. Ross's Assessed Limitation on Plaintiff's Ability to Sit**

Plaintiff's second objection asserts that the Magistrate Judge failed to fairly address the ALJ's rejection of Dr. Ross's opinion that Plaintiff could sit for a maximum of three to four hours in an eight-hour day. Specifically, the ALJ remarked that Dr. Ross's sitting limitation was "more restrictive than claimant's assertion and demonstrated activity . . ." (R. 30.) The Magistrate Judge found that this conclusion was proper because Dr. Ross's limitations were "more restrictive than Plaintiff's testimony and his activities of daily living, as revealed in the record." (R&R 8.) The Magistrate Judge further remarked that this was "sufficient justification for rejecting some of Dr. Ross' opinions concerning Plaintiff's RFC, particularly since the ALJ could have simply ignored all of them." (Id.)

While the Court must respectfully disagree with the Magistrate Judge's remark that the ALJ could have simply ignored Dr. Ross's opinion, we nonetheless find that the ALJ's specific rejection of Dr. Ross's imposed sitting limitation was well supported by substantial evidence. Under applicable regulations and controlling case law, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)). A treating source's opinion on the issue of the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). The factors to be considered in assigning the appropriate weight to a medical opinion include: length of treating relationship and frequency of examination, nature and extent of treating relationship, supportability, consistency, specialization, and other relevant factors. 20 C.F.R. § 404.1527(c)(2).

In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317–18 (3d Cir. 2000) (quotations omitted). Further, when disregarding such an opinion, the ALJ must explain on the record his reasons for doing so. Brewster v. Heckler, 786

F.2d 581, 585 (3d Cir. 1986). It cannot be "for no reason or for the wrong reason." Morales, 225 F.3d at 317 (quotations omitted). At the end of the analysis, however, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2000).

The ALJ, in this case, did not wholly reject Dr. Ross's assessment of Plaintiff's work-related abilities. Rather, she rejected the *degree* of Dr. Ross's imposed limitations on lifting, carrying, and sitting "because the limitations cited are more restrictive than claimant's assertion and demonstrated activity." (R. 30.) Dr. Ross opined, via a mere check in a box without any supporting explanation, that Plaintiff could sit only three to four hours in an eight-hour workday. (R. 209); see Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are week evidence at best," especially when "unaccompanied by thorough written reports."). Upon closer review of the medical record, the ALJ found no support for this limitation, as follows:

> The claimant's assertion of wholly work preclusive limitations is not supported by the medical evidence of record discussed in detail above. In addition, claimant testified to getting some relief from his pain medication, albeit temporary and he is nevertheless able to spend time on the computer and take on-line classes. It is also significant to note that no treating or examining physician has opined that the claimant is precluded from all work activity. His other demonstrated activities are at odds with a finding of disability. In claimant's function report dated January 11, 2001, claimant reported preparing meals, doing some household chores and able to lift a maximum of 25 pounds. He reported getting out as often as five days a week and shops in stores or via the computer.

(R. 30.) Moreover, when the ALJ directly asked Plaintiff about his ability to sit, Plaintiff

9

explicitly denied any significant problems:

> Q. Any problem with sitting?
> A. Other than my knees ache, that's pretty much on the sedentary state. It's just a throbbing, constant ache.
> Q. So is it aggravated at all by sitting or is it just sort of constant?
> A. It's just constant. Yes, ma'am. It's constant.

(R. 53.) Although Plaintiff later remarked that he could work no more than two to three hours online at a time, he also commented that he could then take his next dosage of medication to relieve the pain. (R. 62–63.) As noted by the Magistrate Judge, it was reasonable for the ALJ to infer that, by managing his pain medication properly, Plaintiff could sit at work for up to six hours in a day. (R&R 9.) Finally, it is relevant that no other evidence of record supports an inability to sit for more than four hours in an eight-hour workday. As such, the ALJ's decision to reject Dr. Ross's imposed sitting limitation finds ample support in the evidence of record and was not based on merely a credibility determination or the ALJ's own subjective opinion. Under the "substantial evidence" standard of review and the controlling regulations described above, the Court must affirm this ruling and overrule Plaintiff's second objection.

  **C.**  **The Magistrate Judge's Failure to Address the ALJ's Lack of Discussion of Plaintiff's Alleged Need to Nap Regularly**

  Plaintiff's next objection occupies a mere two sentences in his brief. He argues that, "[t]he ALJ also fails to explain how or whether she has considered Plaintiff's statement that he suffers from daily fatigue and must nap to relieve it. . . . This is another error not addressed by the Magistrate Judge." (Pl.'s Objections 2.)

  The Court finds no merit to this objection. "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130,

133 (3d Cir. 2004).  An ALJ is not expected to reference every piece of relevant information.  Id. Only where the ALJ rejects conflicting probative evidence must the ALJ explain his findings and the reasoning for his conclusions.  Walker v. Comm'r of Soc. Sec., 61 F. App'x 787, 788–89 (3d Cir. 2003).

Plaintiff's alleged need to take short naps on a daily basis appears only as a brief statement in a "Supplemental Function Questionnaire" completed by Plaintiff in January of 2011.  (R. 150.)  Notably, however, he did not testify to any such fatigue during the administrative hearing, nor did he indicate that his need to take naps would interfere with his ability to work.  Moreover, as pointed out by Defendant, Plaintiff did not report any such fatigue to his treating doctor during his regular medical exams in 2010.  (R. 504, 510.)  In fact, he indicated to his doctor that he was "not feeling tired or poorly."  (R. 512.)  Overall, aside from his one-time cursory statement in a social security questionnaire, Plaintiff identifies no evidence within the record—whether it be regular complaints to his physicians or a notation that his medicine was causing him to be tired—to suggest that he suffered from a limiting fatigue.

Ultimately, the ALJ acknowledged Plaintiff's complaint of "drowsiness" and limited concentration, but deemed such complaints contradicted by Plaintiff's activities of daily living.  (R. 29–30.)  Absent some evidence to support that Plaintiff required regular naps, the Court finds no error in the ALJ's cursory treatment of this alleged limitation and refusal to include it within the residual functional capacity assessment.

> **D.     The Magistrate Judge's Finding that the ALJ's Failure to Consider the Favorable Impact of Plaintiff's Lengthy Work History on His Credibility Was Not Reversible Error**

Finally, in his last objection, Plaintiff argues that the ALJ never explicitly acknowledged the length of Plaintiff's work history in evaluating the credibility of his subjective complaints. While the Magistrate Judge recognized this failure, she declined to find reversible error. Plaintiff now contends that this determination is incorrect.

It is well-established that an ALJ is required to "give serious consideration to a claimant's subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective evidence." Mason, 994 F.2d at 1067 (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)). Objective evidence of the symptoms themselves need not exist, although there must be objective evidence of some condition that could reasonably produce them. Green v. Schweiker, 749 F.2d 1066, 1070–71 (3d Cir. 1984). Where medical evidence supports a claimant's complaints, the "complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067–68 (quotations omitted). The ALJ, however, "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible." Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001) (citing Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974)).

Under 20 C.F.R. § 404.1529(c)(3), the kinds of evidence that the ALJ must consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements include: the individual's daily activity; location, duration, frequency, and intensity of the individual's symptoms; factors precipitating and aggravating the symptoms; the type, dosage,

effectiveness, and side effects of medication taken to alleviate the symptoms; treatment, other than medication, received for relief of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms; and other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).  Moreover, the ALJ should account for the claimant's statements, appearance, and demeanor; medical signs and laboratory findings; and physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints.  Weber, 156 F. Supp. 2d at 485 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A. 1996)).  Ultimately, the ALJ's "'determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'"  Schwartz v. Halter, 134 F. Supp. 2d 640, 654 (E.D. Pa. 2001) (quoting SSR 96-7p; Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999)).

      Although work history is not among these listed factors, it is well-established that when a claimant has a lengthy work history of continuous work, his or her testimony is entitled to "substantial credibility."  Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979).  Work history, however, "is only one of many factors an ALJ may consider in assessing a claimant's subjective complaints."  Thompson v. Astrue, No. Civ.A.09-519, 2010 WL 3661530, at *4 (W.D. Pa. Sept. 20, 2010).  "Indeed, a claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility."  Id.

As noted above, the ALJ found that Plaintiff's "assertion of wholly work preclusive limitations" to be "not supported by the medical evidence of record." (R. 30.)  In doing so, the ALJ engaged in a thorough review of inconsistencies in Plaintiff's testimony, the fact that no treating or examining physician opined that he was precluded from all work activity, and Plaintiff's daily activities.  (Id.)  Notably, however, the ALJ did not consider Plaintiff's lengthy history of continuous work prior to claiming disability.  On review of this credibility determination, the Magistrate Judge found that the ALJ erred by failing to "explicitly acknowledge[] the length of Plaintiff's work history, or the favorable impact it should have had on his credibility."  (R&R 10.)  Nevertheless, the Magistrate Judge determined that because Plaintiff's own testimony supported the RFC assessment, the error was not reversible.  (Id.)

The Court agrees.  Without question, the ALJ's opinion would have been more comprehensive had she at least taken note of the fact that Plaintiff had a lengthy work history and that such a work history bears favorably on his credibility.  The ALJ's failure to do so, however, does not rise above the level of harmless error.  See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to remand where stricter compliance with social security ruling would not have changed the outcome of the case); see also Corley v. Barnhart, 102 F. App'x 752, 755 (3d Cir. 2004) (finding that failure to afford heightened credibility to social security claimant's testimony due to long and productive work history was harmless error where claimant did not otherwise establish a work-preclusive impairment).  The ALJ found that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms of knee and shoulder pain, his decreased concentration, his need to take medication, and his limitations on standing, walking and lifting.  (R. 19–20.)  Further, contrary to Plaintiff's belief, the ALJ expressly credited

14

Plaintiff's testimony to the extent that she deemed him unable to lift or carry more than twenty pounds occasionally, unable to stand or walk more than two hours in an eight-hour workday, totally precluded from reaching overhead with the right upper extremity, and unable to operate foot controls, climb ladders or scaffolds, or kneel, crawl, and/or crouch.  (Id.)  She reasoned, however, that his statements concerning the "intensity, persistence and limiting efforts" of his claimed symptoms" not credible to the degree they were inconsistent with the foregoing residual functional capacity assessment.  (Id. at 30.)  In so holding, she relied on the medical evidence of record, Plaintiff's ability to control his pain with medication, and Plaintiff's own daily activities, including running errands, preparing meals, shopping, and taking regular online educational courses.  (Id. at 29–30.)  Ultimately, the ALJ appropriately declined to fully credit all of Plaintiff's statements and concluded that he could return to his past relevant work at the sedentary level.  (Id. at 31.)  Such a finding was grounded in the substantial evidence of record and reasoned consideration of the factors set forth and the social security regulations.  Thus, even had the ALJ expressly afforded Plaintiff's testimony enhanced credibility, the balance of the remaining factors would have required that the outcome of the case remain the same.  Accordingly, the Court denies this objection.

**IV.     CONCLUSION**

For all of the foregoing reasons, the Court will overrule Plaintiff's Objections and adopt the Report and Recommendation in its entirety.  An appropriate Order follows.